**COX, WOOTTON, LERNER,
GRIFFIN & HANSEN, LLP**
Max L. Kelley (SBN 205943)
Marc T. Cefalu (SBN 203324)
900 Front Street, Suite 350
San Francisco, CA 94111
Telephone No.: 415-438-4600
Facsimile No.: 415-438-4601

Attorneys for Plaintiff
BENICIA HARBOR CORPORATION dba
BENICIA MARINA

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENICIA HARBOR CORPORATION dba BENICIA MARINA,<br><br>Plaintiff,<br><br>v.<br><br>M/V IDA LOUISE, Official No. 224620, its engines, tackle, machinery, furniture, apparel, appurtenances, etc., *in rem*, and DOES 1-10,<br><br>Defendants. | Case No.:<br><br>**IN ADMIRALTY**<br><br>**PLAINTIFF'S VERIFIED COMPLAINT** |

Plaintiff BENICIA HARBOR CORPORATION dba BENICIA MARINA ("Benicia Marina" or "Plaintiff") alleges as follows:

## I.    JURISDICTION AND VENUE

1. This action is within the admiralty jurisdiction of this court under 28 U.S.C. § 1331 and 28 U.S.C. § 1333(1) and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. At all times relevant to this action, the *in rem* defendant vessel M/V IDA LOUISE, Official No. 224620, its engines, tackle, machinery, furniture, apparel, appurtenances, etc. (the "Vessel"), was and is duly documented under the laws of the

-1-    Case No.
PLAINTIFF BENICIA MARINA'S VERIFIED COMPLAINT

United States and owned by Stephen David ("David"), or others, with the current record owner appearing to be Lady Benjamin Philip Diaz Cannon ("Cannon").

3. Venue is proper in this Court because the *in rem* defendant Vessel is physically located within the Eastern District of California and currently berthed at the Benicia Marina in Benicia, California. Venue is also proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391(b)(2).

## II.   THE PARTIES

4. Plaintiff Benicia Marina is a corporation duly formed under the laws of the State of California and licensed to do business in this state.

5. *In rem* defendant Vessel is a 68.4-foot wooden-hulled motor yacht of U.S. registry, official number 224620.

## III.   FIRST CAUSE OF ACTION

### [Enforcement of Maritime Lien]

6. On or about June 15, 1995, Benicia Marina and David entered into a Rental Agreement ("Agreement") whereby Benicia Marina agreed to rent one of its berths in its marina for docking the Vessel in return for monthly rent payment and electricity charges from David. A true and correct copy of the Agreement is attached to this Verified Complaint as **EXHIBIT A**.

7. The Agreement provided that, in exchange for the berth provided by Benicia Marina, David would pay the monthly berth rental and electricity fees to Benicia Marina in the amount of $250 per month. **EX. A**, paras. 2 and 3. That monthly rate increased over time and in 2021 the monthly rent was $851.20.

8. David paid the monthly rent due through December 2021 and has not paid any rent since.

9. The outstanding rental fees have not been paid and remain due and owing to Benicia Marina.

10. As of January 31, 2023, the outstanding rental fees total at least $33,061.76, comprised of outstanding monthly rental fees and adjustments for credits.

COX, WOOTTON, LERNER, GRIFFIN, & HANSEN, LLP
900 FRONT STREET, SUITE 350
SAN FRANCISCO, CA 94111
TEL: 415-438-4600
FAX: 415-438-4601

BHC.David / 6027

-2-   Case No.
PLAINTIFF BENICIA MARINA'S VERIFIED COMPLAINT

11. Because of the indebtedness owed to Plaintiff under the Agreement, Plaintiff is entitled to enforce its statutory maritime lien for "necessaries"[1] that arises against the Defendant Vessel *in rem* under general maritime law and 46 U.S.C. §§ 31301(4) and 31341-31343 of the Commercial Instruments and Maritime Liens Act.

12. Plaintiff Benicia Marina has incurred and will incur reasonable attorneys' fees, costs, and expenses, and may be caused to make advances and sustain damages because of the indebtedness, all in amounts not presently ascertainable. Plaintiff will either amend its pleadings to correctly allege the proper amounts when they become known or prove the amounts at trial or an evidentiary hearing.

### IV. ARREST OF THE VESSEL UNDER RULE C AND 46 U.S.C. § 31342 (a)(2)

13. The Vessel and its owner have failed to abide by the terms of the Agreement and pay for wharfage, as set forth above.

14. Under Rule C of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Plaintiff Benicia Marina is entitled to arrest the Vessel.

### PRAYER FOR RELIEF

Plaintiff Benicia Marina prays for the following relief:

A. That process in due form of law, under this Court's admiralty and maritime jurisdiction, issue against the M/V IDA LOUISE (Official No. 224620), her rigging, tackle, apparel, furniture, engines, and all of its other necessaries and equipment, and that all persons claiming any interest in the Vessel be cited to appear and answer this Verified *in rem* Complaint;

B. That Plaintiff's statutory lien for necessaries be declared to be valid against the Vessel in the sum of at least $33,061.76 for unpaid monthly rent, plus other charges and credit adjustments, together with all other amounts which have been or are required to be disbursed by or on behalf of Plaintiff for the care, insuring, preservation, movement, and

---

[1] "Necessaries" include wharfage. *The Western Wave*, 77 F.2d 695, 698 (5th Cir. 1935), citing *Ex parte Easton* (1877) 95 U.S. 68.

COX, WOOTTON, LERNER, GRIFFIN, & HANSEN, LLP
900 FRONT STREET, SUITE 350
SAN FRANCISCO, CA 94111
TEL: 415-438-4600
FAX: 415-438-4601

BHC.David / 6027

storage of the Vessel while in *custodia legis* herein, plus all other advances, expenses, attorneys' fees, costs and disbursements by Plaintiff, together with post-judgment interest at the maximum statutory rate, with Plaintiff's liens to be prior and superior to the interest, of maritime and non-maritime liens or claims of any and all other persons, firms, or corporations;

    C.    That the Vessel be condemned and sold to pay the demands and claims of Plaintiff, with interest and costs, and that Plaintiff may become a purchaser permitted to credit bid any amounts adjudged to be owing at any sale of the Vessel;

    D.    For judgment in favor of Plaintiff Benicia Marina;

    E.    For prejudgment interest as allowed by law on all sums that shall be adjudged to be owed; and

    F.    That Plaintiff receive such other and further relief as the Court deems just and proper, including attorneys' fees and costs.

Dated: February 2, 2023

    COX, WOOTTON, LERNER,
GRIFFIN & HANSEN, LLP
Attorneys for Plaintiff
BENICIA HARBOR CORPORATION dba
BENICIA MARINA

By:   Max L. Kelley
      Max L. Kelley

COX, WOOTTON, LERNER, GRIFFIN, & HANSEN, LLP
900 FRONT STREET, SUITE 350
SAN FRANCISCO, CA 94111
TEL: 415-438-4600
FAX: 415-438-4601

BHC.David / 6027

-4-   Case No.
PLAINTIFF BENICIA MARINA'S VERIFIED COMPLAINT

## VERIFICATION

I, John Ash, declare as follows:

1. I am the President of Benicia Harbor Corporation dba Benicia Marina, the Plaintiff in this action.

2. I have read the contents of the above Verified Complaint and attached exhibit and hereby verify that the facts contained therein are true and correct to the best of my knowledge, information, and belief.

3. I am authorized on behalf of Benicia Harbor Corporation dba Benicia Marina to verify this Complaint.

I declare under penalty of perjury under the laws United States that the forgoing is true and correct and that this verification was executed at Benicia, California, on January 31, 2023.

_____
John Ash

COX, WOOTTON, LERNER, GRIFFIN, & HANSEN, LLP
900 FRONT STREET, SUITE 350
SAN FRANCISCO, CA 94111
TEL: 415-438-4600
FAX: 415-438-4601

-5-

PLAINTIFF BENICIA MARINA'S VERIFIED COMPLAINT          Case No.

# EXHIBIT A

RENTAL AGREEMENT

BENICIA HARBOR CORPORATION

This Rental Agreement is executed in Benicia, California between Benicia Harbor Corporation ("the Marina") and _____Stephen David_____ ("Owner"). The marina agrees to let and owner to rent Berth No. F272 Length of slip: 45  Length of Vessel: 50
With or Without individually metered electric service for moorage of the vessel described in article 25.

1. The Marina acknowledges that it has received from the Owner the sum of $ 0 which constitutes payment by the Owner of the following items: $ 0 as security deposit $_____ as key deposit for keys no. _____ $_____ Pro-rated rent from _____,199__ to _____,199_ $ 250.00 as rent for the period starting 4/1 ,199 5  The Marina and Owner agree to the following additional terms and conditions:

2. The said berth is to be occupied from month to month at a rental rate of $ 5.00 per foot per month, commencing on the _1_ day of April 199 5. The rent is due and payable on the first day of each month and shall be delinquent after the tenth day of the month. Such rent and other charges shall be due on the first day of each and every month whether or not the Marina furnishes Owner with a statement of fees and charges due.

3. Owner agrees to pay Marina eleven cents ($.11) per kilowatt hour for electricity at metered berth (s).

4. Owner agrees to pay and Marina shall be entitled to collect a late fee of 10% of the total amount due and not received on or before the tenth of the month

5. "Leased premises", "space", and "leased space" shall all mean the berth identified above. The right herein granted to Owner to rent the berth entitles the Owner the right to float the vessel described in this contract on the water located above the land leased by Benicia Harbor Corporation, a California Corporation.

6. The security deposit specified in article one of this contract shall be held by the Marina until this rental agreement is terminated. Upon termination of this rental agreement, the Marina shall use said security deposit for the payment of the following:
(a) Repairs necessary to put said berth in the same condition as it originally was when received by Owner, reasonable wear and tear excepted,
(b) Rent due , if any,
(c) Payment of outstanding bills on electricity and services rendered; and/or
(d) To remedy any other default hereunder.
Any excess of said security deposit remaining after payment to the Marina of the foregoing items shall be returned to the Owner by the end of the month following termination of this rental agreement. Owner understands and agrees that Marina's use of said security deposit is not the exclusive remedy for all or any default by Owner under this rental agreement and the Marina shall have all rights and remedies which it may otherwise have in law and equity.

7. The berth and/or other mooring facilities may not be used for permanent living unless authorized in writing, in advance, by the harbormaster.

8. This rental agreement may not be assigned or the berthing space sublet without the written permission of the Marina, which permission may be withheld for any or no reason.

9. Owner shall give written notice to the Marina of his intention to vacate said berth and to terminate this rental agreement at least thirty (30) days in advance, and rent shall be due and payable to and including the date of termination. Such termination shall occur only on the last day of the next succeeding month following the giving of such notice. The Marina accepts no mid-month terminations. If the Owner fails to give thirty (30) days written notice of his intention to terminate this rental agreement, upon Owner's vacation or termination all rights of the Owner shall terminate and the entire deposit shall be retained by the marina.

10. The Marina does not accept the boat for storage, shall not be held liable in any manner for the safe keeping or condition of the same, and is not responsible therefor as a warehouseman, but the relation between parties is that of landlord and tenant. The berth shall be used at the sole risk of the Owner, and Marina shall not be liable or responsible for the care or protection of the boat, including gear, equipment and contents or loss or damage of whatever kind or nature to the boat, its contents or equipment howsoever occasioned, including the consequence of any power interruption There is no warranty of any kind as to the condition of the Marina, any portion thereof, including utilities, floats, walks, gangways, ramps or mooring gear. Marina shall not be responsible for injuries to persons or property occurring thereon or on any part of the premises or for any other reason whether herein specifically stated or not. Owner agrees to indemnify and hold Marina and its employees and agents harmless of and from any and all claims, demands or charges arising by reason of the storage of the Owner's boat, and equipment thereon or used therewith or the

acts of the Owner, his invited guests while on the Marina property.

11. The Marina requires all boat Owners using its facilities, other than on a day to day basis, to have effective property damage and personal injury insurance for the protection of others, with the Marina as an additional insured, on file with the Marina. Prior to the date the term hereof commences, Owner shall furnish Marina with evidence of such insurance and shall replace such insurance upon its termination.

12. The Owner will keep the leased premises and walkway adjacent thereto neat, orderly and as free as possible from all inflammable substances and will maintain the leased premises in as good a condition and repair as they now are, reasonable use and wear, damage by the elements excepted.

13. Docks, access fingers and aisles will not be obstructed by Owner nor used by Owner as a storage area for lockers, tools, equipment, gear, etc. Dinghies, when unattended shall not obstruct water or docks. The Marina shall have the right, in its discretion, to remove any personal property left about or around the leased premises at any time and store them in public or private warehouse at Owner's risk and expense.

14. Owner shall have use of the berth noted above for only the boat registered with the Marina. For security and other reasons, Owner shall register his boat with Marina on Marinas form provided for this purpose. If Owner removes his boat from Marina for extended periods (normally more than three consecutive days), Owner agrees to notify Marina management. Marina may use the berth when not in use by Owner without reduction of the rent or otherwise compensating the Owner. Owner shall not allow or authorize the use of the berth by any other boat or person.

15. No part of any boat shall extend over the main walkway, or otherwise outside the berth. The Marina may, in its discretion, move the Owners boat to a different adequate mooring slip from time to time to accommodate changing needs. Owner hereby grants all necessary permissions for such move. The Owner will, at his own expense, provide adequate mooring lines. If such lines should break or be deemed inadequate in Marina's sole judgement, the Marina may at its option, replace same thereupon the Owner will reimburse Marina for said lines and a reasonable charge for installing them within ten (10) days after being billed therefor.

16. Owner will comply with all reasonable rules and regulations and amendments thereto pertaining to the Marina as are published by the Marina. Such rules and regulations and amendments thereto will be deemed published when posted on the bulletin board of the office of the Marina or when a copy thereof has been delivered to the Owner. Owner acknowledges the receipt of a copy of said rules and regulations upon execution of this Rental Agreement.

18. In the event that the Owner fails to pay any part of the rental on the date due or any other sum required to be paid, or breaches any other covenant or condition of this Rental Agreement, the Marina shall have the right to terminate this Rental Agreement. No termination of this Rental Agreement shall occur unless the Marina declares such termination in writing to the Owner. Upon such written notification, the Marina may remove Owner and Owner's property from the leased premises or may take and retain possession of Owner's boat or other property until all sums due hereunder are paid in full. Retaining possession of Owner's boat may include locking the same to the mooring dock. Owner waives any and all claim for any damages caused or alleged to be caused by such removal or retention. For boats registered in California, Marina shall have liens under Sections 490 and 501 of the California Harbors and Navigation Code. Nothing contained herein shall be deemed to waive or impair the Marina's maritime lien upon Owner's boat or other property. Marina shall have the right to take Owner's boat into possession to secure all sums that become due from Owner. Disorderly or indecorous conduct by an Owner or his guests or invitees that might injure a person, cause damage to property or harm the reputation of the Marina, shall be cause of immediate termination of the Owners Rental Agreement. If legal action is commenced by the Marina for unlawful detainer, to recover any sums due under this Rental Agreement, or for the breach by Owner of any covenant or condition of this Rental Agreement, then Owner agrees to pay Court costs and reasonable attorney's fees incurred in such action.

19. The waiver by the Marina if any breach of any term, covenant or condition contained in this Rental Agreement to Owner shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or of any other term, covenant or condition. The acceptance of rent by the Marina subsequent to any such breach by Owner of any term, covenant or condition of this rental is accepted, other than the failure of the Owner to pay the particular rental so accepted, regardless of the Marina knowledge of such preceding breach at the time of acceptance of such rent.

20. The terms, covenants and conditions contained this Rental Agreement shall inure to the benefit of and shall be binding upon the heirs, successors, executors, administrators, and assigns of all the parties hereto.

WAIT TRANSFER LIST _____

DATE _____

INSUR.RENEWAL __/__/__.

CARRIER _____

I _____*[signature]*_____ DATE 6/15/95
Owner

X _____ DATE __/__/__
Owner

BENICIA HARBOR CORPORATION
_____*[signature]*_____ DATE 5/27/95
HARBORMASTER

21. Owner's use of exterior areas and any recreational or common areas or facilities shall be in strict accordance with the rules and regulations established by the Marina, and such rules and regulstions may be changed from time to time at the Marina's sole discreation and without prior notice to Owner.

22. If Owner's check is returned by the bank for lack of funds, Owner shall redeem such check with cash, plus $5.00 service charge immediately upon notification to Owner by Marina that such check or checks have been returned. Rent and service charges shall be paid by Owner to the Marina at the address first above written.

23. In order to assure that the Marina and the boats berthed thereat appear clean and orderly, thus enhancing the visible appearance and condition of the Marina, and to avoid damage to the boat, it shall be the obligation of the Owner to wash and detail his/her boat on a regular basis.

24. There are no other terms, conditions, or agreements, express or implied, written or oral, between Owner and the Marina, their agents or employees, that extend, limit, or in any way modify the terms, covenants and conditions specified in this Rental Agreement.

25. I/WE HAVE READ AND UNDERSTAND THE CONTENTS OF THE FOREGOING RENTAL AGREEMENT.

NAME __Stephen David__
NAME __See Master Contract__
ADDRESS __963 Jefferson St__
CITY __Benicia__ ST. __Ct__ ZIP __94510__
HOME PHONE __7466506__ WORK __7465848__
                        Page __415 3715369__
OTHER PHONE __Boat  415 6089632__
DRIVERS LICENSE __M0600729__
SLIP NO. __F272__
BOAT NAME __Oriana__
LENGTH __50'__ BEAM _____ DRAW _____
BOAT ID # _____ REG/DOC # _____
MAKE _____ YR. _____
HOLD. TANK _____ HULL _____ TYPE _____