UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENICIA HARBOR CORPORATION dba BENICIA MARINA, <br><br> Plaintiff, <br><br> v. <br><br> M/V IDA LOUISE, Official No. 224620, its engines, tackle, machinery, furniture, apparel, appurtenances, etc., *in rem*; and DOES 1-10, <br><br> Defendants. | No. 2:23-cv-00205-DJC-CKD <br><br><br> ORDER |

Pending before this Court is Plaintiff Benicia Harbor Corporation doing business as Benicia Marina's ("Benicia Marina" or "the Marina") Motion for Interlocutory Sale of Defendant vessel M/V IDA LOUISE (the "Vessel"). (ECF No. 32). The Vessel's owner, Lady Benjamin PD Cannon ("Lady Benjamin"), opposes the sale and cross-moves for an order vacating the Vessel's arrest. (ECF No. 39.) The Court held a hearing on both motions on October 12, 2023.

Having considered the Parties' briefings and arguments, the Court will GRANT Plaintiff's Motion and DENY Lady Benjamin's Cross-Motion.

////

////

1

**BACKGROUND**

Defendant Vessel is a wooden-hulled motor yacht of U.S. registry, official number 224620. (Compl. (ECF No. 1) at 1–2.) On or about June 15, 1995, Plaintiff entered into a rental agreement with Stephen David ("David"), the Vessel's previous owner, under which Plaintiff agreed to provide the Vessel a berth at the Marina in exchange for monthly rent and electricity charges. (*Id.* at 2.) Plaintiff alleges David paid the monthly rent due up through December 2021, but has not paid any rent since. (*Id.*) Plaintiff further alleges that, as of January 31, 2023, at least $33,061.76 is outstanding and owed under the rental agreement. (*Id.*) On October 18, 2022, Lady Benjamin and David entered into a purchase agreement pursuant to which David sold and transferred a 100% ownership interest in the Vessel to Lady Benjamin. (Opp'n and Cross-Mot. Vacate Arrest (ECF No. 39) ¶ 1.)

Plaintiff brought this action on February 2, 2023, under 46 U.S.C. § 31342(a) and Rule C of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") to enforce a statutory maritime lien for "necessaries" against the Vessel *in rem*. (Compl. at 3.) Plaintiff filed an *ex parte* application for an order directing the Clerk of the Court to issue an arrest warrant for the Vessel the same day, which the Court granted. (*Ex Parte* Appl. Warrant (ECF No. 3); Order Granting Warrant (ECF No. 11).) The Vessel was arrested by the U.S. Marshal and has been in the care and custody of Plaintiff, who was appointed substitute custodian, at the Benicia Marina in Benicia, California, since February 17, 2023. (*See* Order Appointing Substitute Custodian (ECF No. 10); Returned Warrant (ECF No. 14).)

Lady Benjamin was served with notice of the arrest on March 28, 2023 (ECF No. 22) and filed an Answer and Counterclaim on behalf of the Vessel on April 18, 2023 (ECF No. 23), but has not posted, or offered to post, security to obtain release of the Vessel since that time. (Mot. Interloc. Sale (ECF No. 32) at 3.) Thus, Plaintiff now moves for interlocutory sale of the Vessel under Supplemental Rule E(9)(a)(i), arguing

that: (1) the Vessel is subject to deterioration and decay in the Benicia Marina; (2) the expense of keeping the Vessel is excessive or disproportionate; and (3) there has been an unreasonable delay in securing the release of the Vessel. (*Id.* at 3–4.)

Lady Benjamin opposes sale of the Vessel, arguing that: (1) Plaintiff itself has exacerbated the deterioration of the Vessel; (2) Plaintiff has not shown the costs of maintaining the Vessel are excessive; and (3) the delay in seeking the Vessel's release has not been unreasonable. (Opp'n and Cross-Mot. Vacate Arrest ¶¶ 15–27.) Lady Benjamin also cross-moves to vacate the arrest order on the Vessel, arguing that Plaintiff failed to provide Lady Benjamin with proper notice of the Vessel's arrest, and requests that, if she is required to post security for release of the Vessel, Plaintiff also be required to post countersecurity. (*Id.* ¶¶ 30–36.)

The Court will address first the Cross-Motion to Vacate Arrest and then the Motion for Interlocutory Sale in turn below.

**CROSS-MOTION TO VACATE ARREST ORDER**

**I.    Legal Standard**

Section 31342(a) confers upon "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" a "maritime lien on the vessel," and permits that person to "bring a civil action *in rem* to enforce the lien." 46 U.S.C. § 31342(a); *see also Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 919 (9th Cir. 2002) ("The theoretical basis for the maritime lien rests on the legal fiction that the ship itself caused the loss and may be called into court to make good. Maritime liens arise for the unpaid provision of necessaries . . . as well as in other circumstances."). "In general, maritime liens, including necessaries liens, exist to keep ships moving in commerce, while preventing them from sailing away from the debts they incur." *Id.* "Necessaries" include wharfage services. *The W. Wave*, 77 F.2d 695, 698 (5th Cir. 1935); *see also Crescent City Harbor Dist. v. M/V Intrepid*, No. C-08-1007-JCS, 2008 WL 5211023, at *3 (N.D. Cal. Dec. 11, 2008).

////

Pursuant to Supplemental Rule E(4)(f), whenever property is arrested or attached to enforce a maritime lien, "any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated."  Fed. R. Civ. P. Supp. R. E(4)(f).  A plaintiff need not prove its case to defeat a motion to vacate.  *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1211 (9th Cir. 2010).  Rather, as the arresting party, the plaintiff must present sufficient evidence to show that the arrest was supported by probable cause.  *Del Mar Seafoods Inc. v. Cohen*, No. C 07-02952-WHA, 2007 WL 2385114, at *3 (N.D. Cal. Aug. 17, 2007).  The probable cause hearing is not intended to definitively resolve the dispute between the parties, but rather to make a preliminary determination of whether there were reasonable grounds for issuing the arrest warrant.  *Id.*  Under the "probable cause" standard, plaintiff must demonstrate a "fair or reasonable probability" that they will prevail on their claim, which in this case essentially translates to a likelihood of establishing a maritime lien. *See KTB Oil Corp. v. M/V CIELO DI TOKYO*, No. 2:12–cv–01834–MCE–KJN, 2013 WL 708536, at *1 (E.D. Cal. Feb. 26, 2013); *Greger Leasing Corp. v. Barge PT. Potrero*, No. C-05-5117-SC, 2006 WL 889537, at *1 (N.D. Cal. Apr. 5, 2006).

## II.   Discussion

In support of Plaintiff's contention that they are owed at least $33,061.76 in outstanding rental fees, Plaintiff presents a verification from the President of Benicia Marina, John Ash, who declares that the facts contained within the Complaint are true and correct, as well as a copy of the rental agreement between Plaintiff and David. (Compl. at 5; Compl. Ex. A (ECF No. 1).)  This evidence, as required under 46 U.S.C. § 31342(a), establishes that (1) Plaintiff provided necessaries; (2) to the Vessel; (3) on the order of the Vessel's owner at the time.  *See Ventura Packers*, 305 F.3d at 922.

Lady Benjamin does not dispute that Plaintiff provided necessaries in the form of wharfage to the Vessel.  She does, however, challenge the validity of the Vessel's claimed indebtedness.  (*See* Answer and Counterclaim (ECF No. 23) at 2.)

Specifically, Lady Benjamin states that "upon information and belief, Mr. David attempted to make further rent payments to Benicia Marina, but Benicia Marina refused the payments and instructed Mr. David not to make said payments." (*Id.*) Further, at the hearing, Lady Benjamin's counsel argued that the evidence provided by Lady Benjamin in her Cross-Motion raises the question of whether Plaintiff waived Lady Benjamin's debt given that she attempted to present Plaintiff with a check for $1,000 that Plaintiff failed to cash. (*See* Goodyear Decl. (ECF No. 39-1) ¶¶ 4-5.) This evidence does not adequately rebut that there is a lien on the Vessel under 46 U.S.C. § 31342(a);[1] rather, it raises a factual dispute as to the "scope and amount of the purported lien," which goes to the ultimate merits of the case. *See SMS Yacht Maint. v. One Nautique 210 Pleasure Vessel*, No. 12–CV–2038–IEG-NLS, 2012 WL 6737197, at *1 (S.D. Cal. Dec. 28, 2012) (denying motion to vacate arrest of a vessel despite a dispute as to the maritime lien's scope and amount because "it remains undisputed that Plaintiff indeed supplied necessaries to the Vessel on order of . . . the Vessel's owner" which "suffice to support probable cause for entitled [sic] to the alleged maritime lien and thus for the arrest warrant's issuance"). The Court need not resolve disputed facts as to the lien's amount at this stage. *Id.*; *see also Del Mar Seafoods Inc.*, 2007 WL 2385114, at *3. Thus, the undisputed fact that Plaintiff supplied necessaries to the Vessel on the orders of the Vessel's prior owner supports probable cause for the arrest warrant's issuance. *See SMS Yacht Maintenance*, 2012 WL 6737197, at *1; *see also Trans–Tec Asia v. M/V HARMONY CONTAINER*, 518 F.3d 1120, 1127 (9th Cir. 2008).[2]

---

[1] Indeed, the fact that Lady Benjamin attempted to present a $1,000 check for outstanding rent and electricity charges indicates that she was aware that there were outstanding fees, strengthening Plaintiff's position. (Opp'n and Cross-Mot. Vacate Arrest ¶ 8; *see also* Goodyear Decl. ¶¶ 4-5.)

[2] At Oral Argument, Lady Benjamin's counsel indicated that he wished to call a witness. As an initial matter, Lady Benjamin gave no notice to opposing counsel of her intent to call witnesses. Further, Lady Benjamin neither requested an evidentiary hearing in her moving papers nor provided any evidence by way of affidavits or exhibits to suggest such a hearing was warranted. Finally, Lady Benjamin's counsel's offer of proof at the hearing suggested the testimony would be largely duplicative of the information in her Opposition and Cross-Motion to Vacate Arrest, which would be insufficient to defeat probable cause. Accordingly, the Court concludes an evidentiary hearing is not warranted.

Lady Benjamin further asserts that the arrest should be vacated because she was given no notice of the debt incurred by the Vessel, claiming "Benicia Marina failed to present an invoice to Lady Benjamin for the monthly rent payments and electricity charges . . . allegedly serving as the basis for Benicia Marina's arrest of the Vessel . . . because Lady Benjamin was not a lawful tenant of the Marina." (Opp'n and Cross-Mot. Vacate Arrest ¶¶ 6–7; *see also id.* ¶¶ 30–31.) However, Plaintiff is correct that a maritime lien is a "secret" lien that arises as a matter of law and may operate to the prejudice of a bona fide purchaser without notice. *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 534 (9th Cir. 2018); *see also Spooner v. Multi Hull Foiling AC45 Vessel 4 Oracle Team USA*, No. 15–cv–00692–JCS, 2015 WL 1262909, at *10 (N.D. Cal. Mar. 18, 2015). Therefore, no notice to Lady Benjamin was required.

Finally, the Court notes that Lady Benjamin's Cross-Motion to Vacate Arrest comes after several months of delay. Under Supplemental Rule E(4)(f), Lady Benjamin was entitled to a "prompt hearing" following arrest of the Vessel to challenge the arrest's lawfulness. *See* Fed. R. Civ. P. Supp. R. E(4)(f). A hearing over seven months after the arrest is not prompt.[3] Lady Benjamin claims that she was delayed in seeking vacatur in part because she experienced housing insecurity after being displaced from the Vessel, which was her place of residence. (Opp'n and Cross-Mot. Vacate Arrest ¶¶ 23–25.) Indeed, Lady Benjamin's counsel suggested at the hearing that Plaintiff's intent in arresting the Vessel was not primarily to recover unpaid fees but was rather to displace Lady Benjamin and the Vessel from the Marina given the Vessel's dilapidated

---

[3] As another court in this circuit has observed, while "neither rule nor the sparse case law applying the rules indicates that a party waives its right to an adversary hearing by failing to request one immediately after the arrest," "the Advisory Committee notes to the 1985 Amendment to Supplemental Rule E(4)(f) indicate that the rule was implemented in order to 'satisfy the constitutional requirement of due process by guaranteeing to the shipowner a prompt *post-seizure* hearing . . . .' (emphasis added). The wording of this explanatory sentence indicates that the word 'prompt' is meant to describe the temporal interval between the arrest and the hearing, rather than the interval between the motion for the hearing and the hearing itself." *Greger Leasing Corp. v. Barge PT. POTRERO*, No. 05-5117 SC, 2006 WL 709097, at *2 (N.D. Cal. Jan. 23, 2006). In addition, "a review of the several reported cases that have involved adversary hearings under Supplemental Rule E(4)(f) indicates that such hearings generally take place within several days of the arrest." *Id.* (citing *Marubeni Am. Corp. v. M/V Unity*, 802 F. Supp. 1353 (D. Md.1992); *Erne Shipping Inc. v. HBC Hamburg Bulk Carriers GmbH & Co. KG*, 409 F. Supp. 2d 427 (S.D.N.Y. 2006)).

state and allegations that Lady Benjamin was living aboard without permission. Plaintiff admits as much in their papers. (*See* Request for Review of Maritime Arrest (ECF No. 7) at 2-3.) The Court is sympathetic to the difficulties housing insecurity can cause and understands why this might have contributed to some delay on Lady Benjamin's part. The delay here, however, is substantial. Additionally, during this delay the Vessel has been in Plaintiff's care accruing *custodia legis* expenses that Plaintiff is owed under law and this Court's order.[4] (*See* Order Appointing Substitute Custodian at 3.) Whatever Plaintiff's intent in bringing this action may have been, as it stands Plaintiff has a valid lien on the Vessel and is entitled to seek recovery of the fees owed to them.

Accordingly, the Cross-Motion to Vacate Arrest is denied.

## MOTION FOR INTERLOCUTORY SALE

### I.   Legal Standard

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). The Supplemental Rules provide that upon application of a party having custody of the subject property, a court may order sale of the property if it is "liable to deterioration" while in custody pending the action, "there is an unreasonable delay in securing the release of the property," or if "the expense of keeping the property is excessive or disproportionate." Fed. R. Civ. P. Supp. R. E(9)(a)(i). In order to prevail, the moving party need only show one of these

---

[4] When a vessel is seized, Local Rule 550 places the initial custodial responsibility with the U.S. Marshal. *See* L.R. 500(a) (Mar. 1, 2022). The Marshal is entitled by statute to recover actual expenses incurred, such as storage associated with the keeping of attached property (including boats and vessels). *See* 28 U.S.C. § 1921. In addition, the Local Admiralty Rules provide for the designation of a substitute custodian. L.R. 500(a). Benicia Marina was appointed the Vessel's substitute custodian in return for payment of the expenses and charges related to the care, custody, and security of the Vessel, which have been deemed administrative expenses of the U.S. Marshal. (*See* Order Appointing Substitute Custodian at 3.) Given Lady Benjamin's delay in seeking review of the arrest of the Vessel or an attempt to release the Vessel to her upon her giving security in lieu of a sale, these expenses may well now exceed the value of the Vessel independent of any lien.

three criteria is met. *Cal. Yacht Marina–Chula Vista, LLC v. S/V OPILY*, No. 14-CV-01215-BAS-BGS, 2015 WL 1197540, at *2 (S.D. Cal. Mar. 16, 2015); *Bank of Rio Vista v. VESSEL CAPTAIN PETE*, No. C 04-2736-CW, 2004 WL 2330704, at *2 (N.D. Cal. Oct. 14, 2004).

## II.   Discussion

Plaintiff argues that all three criteria of Supplemental Rule E(9)(a)(i) have been met here, warranting sale of the Vessel. For the reasons set forth below, the Court agrees, and will grant the sale.

### A.   The Vessel is Subject to Deterioration, Decay, or Injury

Under Supplemental Rule E(9)(a)(i)(A), an interlocutory sale of a vessel under arrest is appropriate where the vessel is subject to deterioration and decay while in custody pending resolution of the action. *See, e.g., Cal. Yacht Marina–Chula Vista, LLC*, 2015 WL 1197540, at *2–3.

Plaintiff alleges that "prior to its arrest the Vessel was already in a deteriorated state, including a compromised hull that allows constant water incursion, inoperable electrical and mechanical systems, and a neglected and dilapidated interior" and that "the Vessel remains subject to further decay" which "prejudices Plaintiff's security interest in the Vessel." (Mot. Interloc. Sale at 4.) As evidence of the Vessel's condition, Plaintiff supplies a declaration from Benicia Marina's Harbormaster, Ryan Opfer, who attests that he has extensive education and experience concerning repair and maintenance of maritime vessels, and that he has personally inspected the Vessel many times as part of his duties as Harbormaster. (Opfer Decl. (ECF No. 32-1) at 2.) Opfer states that the "Vessel suffers from general neglect both inside and out, including water leakage, marine growth, and weathering," smells of rot, has an electrical system in disrepair, and "will continue to deteriorate due to its exposure to the elements, lack of periodic maintenance and repair, and lack of use." (*Id.* at 2–3.) Opfer also provides photos of the Vessel documenting its condition. (*See* Opfer Decl. Ex. 1 (ECF No. 32-1).)

Lady Benjamin argues that she was attempting to repair the Vessel prior to its arrest, and that the Vessel's further decay and deterioration have been caused by Plaintiff's "own neglect." (Opp'n and Cross-Mot. Vacate Arrest ¶¶ 16–18.) Lady Benjamin does not dispute, however, that the Vessel is in a state of disrepair, nor that the Vessel will be subject to further deterioration and decay during the pendency of this action. Lady Benjamin is correct that Plaintiff "is not performing any repairs or maintenance on the Vessel, other than to keep it afloat and secure." (Opfer Decl. at 3.) However, in the Court's order appointing Plaintiff as the substitute custodian for the Vessel, the Court ruled that Plaintiff could perform "basic maintenance and minor repairs" on the Vessel, but that any "major repairs or unanticipated maintenance" required a court order. (Order Appointing Substitute Custodian at 3;) *see also* L.R. 550(b). Thus, Plaintiff's limited repairs are in line with the Court's order. Lady Benjamin has not sought the Court's leave to conduct major repairs of the Vessel while it remains under arrest.

As Plaintiff has provided the Court with uncontested evidence of the Vessel's deterioration and decay, the Court finds that sale of the Vessel is warranted. *Cf. Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Off. No. 1130283*, No. 08CV2044-BTM-WMC, 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009) (stating that a general assertion of a vessel's deterioration without evidence of specific injury does not satisfy the "deterioration, decay, or injury" provision of Supplemental Rule E(9)(a)(i)).

### B. The Costs of Maintaining the Vessel under Arrest are Disproportionate and Excessive

An interlocutory sale is appropriate where the costs of maintaining a vessel are excessive or disproportionate. Fed. R. Civ. P. Supp. R. E(9)(a)(i)(B). Maintenance expenses of several thousand dollars per month, particularly where a defendant has made no attempt to secure the vessel's release, are excessive and disproportionate. *See Vineyard Bank,* 2009 WL 799304, at *2 (finding that a total of $7,473.82 in maintenance expenses since the vessel's arrest was an excessive cost); *see also*

*Americanwest Bank v. P/V INDIAN*, No. 12cv1786-AJB-BGS, 2013 WL 784756, at *3 (S.D. Cal. Mar. 1, 2013) (finding expenses were excessive and disproportionate where costs to maintain the defendant vessel were approximately $1,766 per month and the total custodial expenses totaled approximately $7,475); *Caterpillar Fin. Servs. Corp. v. Coleman*, No. 99–03821 CM RZX, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999) (finding that the "expense of keeping the [Defendant Vessel] in custody, specifically $1,400.00 per month, . . . appears to be excessive").

Here, Plaintiff represents that "the custodial expenses for the safekeeping of the Vessel are $100 per day, or approximately $3,000 per month, which the Vessel started incurring at the time of its arrest on February 17, 2023" and that the Vessel has incurred at least $20,000 in custodial fees thus far.  (Mot. Interloc. Sale at 5.)  Further, Benicia Marina's Harbormaster opines that the market value, if any, of the Vessel is likely "based mostly on its value as scrap[,]" given the Vessel's dilapidated condition.  (Opfer Decl. at 3.)  Assuming these estimates are correct, the fees required to maintain the Vessel are disproportionate to the Vessel's value, weighing in favor of sale.  *See Cal. Yacht Marina–Chula Vista, LLC*, 2015 WL 1197540, at *4 (finding that total custodial fees of $6,000 were disproportionate to the vessel's $12,000 estimated fair market value); *cf. Triton Container Int'l Ltd. v. Baltic Shipping Co.*, No. CIV. A. 95-0427, 1995 WL 217483, at *2 (E.D. La. Apr. 12, 1995) (denying interlocutory sale because plaintiff had "not informed the Court of the magnitude of either the expenses or the value of the vessel" so the court had no means to evaluate whether the costs were excessive or disproportionate).

Lady Benjamin objects that Plaintiff fails to explain how the claimed costs compare to the Vessel's fair market value or to normal custodial expenses.  (Opp'n and Cross-Mot. Vacate Arrest ¶¶ 20–22.)  Plaintiff is correct, however, that Supplemental Rule E(9) does not provide "guidance or interpretation as to how a district court analyzes the expense of keeping the property." *Caterpillar Fin. Servs. Corp.*, 1999 WL 33218595, at *1 (explaining that some courts have determined that

the expense of custody, coupled with unreasonable delay in securing release of the vessel, constitute sufficient grounds for interlocutory sale of the vessel, while other courts have assessed the expense of custody in relation to the value of the subject vessel (collecting cases)); *see also Crescent Towing & Salvage Co. v. M/V AMERICANA*, No. 11-131 C/W 11-175, 2011 WL 13377762, at *5 (E.D. La. Sept. 21, 2011) ("Rule E(9) does not provide a benchmark for determining whether the expense of seizure is excessive or disproportionate"). Lady Benjamin does not argue or provide any evidence suggesting the fees are unreasonable or that Opfer's opinion concerning the value of the Vessel is incorrect.[5] However, even putting aside Opfer's opinion concerning the Vessel's value, the expense of maintaining the Vessel coupled with Lady Benjamin's delay in seeking release of the Vessel, as discussed further below, clearly weigh in favor of sale. *See 20th Century Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1437–38 (M.D. Fla. 1997) (allowing sale of vessel based on evidence of unreasonable delay where parties could not agree on the vessel's value).

### C. Lady Benjamin Has Made No Effort to Post Security or Otherwise Secure the Vessel's Release

Admiralty procedures allow an arrested vessel to be released from custody upon the posting of security. *See* Fed. R. Civ. P. Supp. R. E(5). "The stipulation for value, bond or other security is substituted for the vessel as the *res* subject to the court's jurisdiction" and the "plaintiff's lien for the claims alleged against the vessel is transferred to the security posted." *Alyeska Pipeline Serv. Co. v. Vessel Bay Ridge*, 703 F.2d 381, 384 (9th Cir. 1983). Supplemental Rule E(9)(a)(i)(C) authorizes an interlocutory sale when there has been an unreasonable delay in securing the release of the property. Courts have routinely found four months to be a sufficient delay to authorize an interlocutory sale. *See, e.g., Ferrous Fin. Serv. Co.*, 567 F. Supp. at 401 (four-month delay); *Caterpillar Fin. Servs. Corp.*, 1999 WL 33218595, at *2 (same).

---

[5] Indeed, Lady Benjamin's counsel admitted at the hearing that the Vessel was purchased by Lady Benjamin for $1, supporting the conclusion the Vessel has little to no market value.

The Vessel has been arrested in Plaintiff's marina for over seven months. During that time, Plaintiff alleges that Lady Benjamin has done nothing to secure the release of the Vessel, such as posting a bond or letter of undertaking, other than filing an Answer and Counterclaim. (Mot. Interloc. Sale at 6–7.) Lady Benjamin counters that she has taken "steps to coordinate the release of the Vessel, including good-faith settlement negotiations through her counsel that ultimately did not resolve the issue." (Opp'n and Cross-Mot. Vacate Arrest ¶ 25.) However, Lady Benjamin does not state or provide any evidence that she has taken the steps contemplated under Supplemental Rule E(5) to secure release of the vessel, such as negotiating and stipulating to the amount and nature of the required security.

Even where the circumstances justifying interlocutory sale under Supplemental Rule E(9)(a)(i) are met, as they are here, Lady Benjamin could move this Court to release the Vessel to her upon her giving security in lieu of a sale. *See* Fed. R. Civ. P. Supp. R. E(9)(a)(ii). She has not done so. Instead, she objects to any requirement the Court might impose to post security for the Vessel's release and asks that if she "is required to post security for release of the Vessel . . . Benicia Marina [also] be required to post countersecurity" for the damages she has allegedly suffered. (Opp'n and Cross-Mot. Vacate Arrest ¶ 32.) Not only is there no justification for Plaintiff to post bond given that they were not legally permitted to perform repairs, but there is also no indication that Lady Benjamin is prepared to post sufficient bond to avoid the sale of the Vessel.

While defendants should generally be afforded sufficient time to seek a vessel's release before interlocutory sale is granted, the Court finds that sufficient time has passed here, and that Lady Benjamin has failed to diligently seek the Vessel's release. *See Vineyard Bank*, 2009 WL 799304, at *2. The significant delay weighs in favor of granting sale.

////

////

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Lady Benjamin's Cross-Motion to Vacate Arrest (ECF No. 39) is DENIED;
2. Plaintiff's Motion for Interlocutory Sale (ECF No. 32) is GRANTED;
3. Defendant M/V IDA LOUISE, U.S. registry official number 224620, its engines, tackle, machinery, furniture, apparel, appurtenances, etc., *in rem* be sold by the U.S. Marshal for the Eastern District of California at a public auction consistent with Local Rule 570[6];
4. The Clerk of the Court be directed to issue a Writ of *Venditioni Exponas* for the sale of the Vessel, in the form attached hereto as Exhibit A;
5. Upon service on the U.S. Marshal of a certified copy of this Order, the U.S. Marshal is directed to give notice of said public sale (or to direct Plaintiff to give notice) consistent with Local Rules 171, 570(a), and 580;
6. The successful bidder be required to pay the U.S. Marshal consistent with Local Rule 570(b) as follows:
    a. The full purchase price if the bid is no more than $1000, or at least $1,000 or 10 percent of the amount of the successful bid, whichever is greater, if the bid exceeds $1,000 immediately at the time of the completion of the auction sale; and
    b. The remainder of the balance of the purchase price be paid in cash, certified check, or cashier's check within three days of the sale.
7. The U.S. Marshal be directed to file a report in compliance with Local Rule 570(e) after the completion of the sale, but no later than one court day before payment of the balance is due.

---

[6] The Court has learned that in response to an inquiry from the Court to the U.S. Marshal for the Eastern District regarding the information the U.S. Marshal's office would require to effectuate the sale of the vessel, the U.S. Marshal's office had contact with counsel for Plaintiff and that counsel provided information to the U.S. Marshal's office. The Court has informed the U.S. Marshal's office that it is unable to consider any *ex parte* information from counsel and has not reviewed or considered any such information in the preparation of this Order or Exhibit A.

8. The sale be ordered confirmed as a matter of course without any affirmative action by the Court if no written objections are timely filed with the Court. L.R. 570(g).
9. The successful purchaser be directed to present a form of order reflecting the confirmation of the sale for entry by the Clerk on or after the fifth day of the sale.  L.R. 570(g).
10. The U.S. Marshal be directed to transfer title to the purchaser upon presentation of the confirmation order signed by the Clerk.  L.R. 570(g).
11. The proceeds from the sale be ordered deposited into the registry of the Court pending the Court's determination of the disposition of such proceeds.  Fed. R. Civ. P. Supp. R. E(9)(b).

IT IS SO ORDERED.

Dated:   **October 26, 2023**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC4 – benicia23cv00205.MotSaleVessel